Christine E. Baur, State Bar No. 207811
Rayla D. Boyd, State Bar No. 256788
**LAW OFFICE OF CHRISTINE E. BAUR**
4653 Carmel Mountain Road, Suite 308 #332
San Diego, CA 92130
Telephone: (858) 350-3757
Facsimile: (858) 876-9480

Attorneys for Secured Creditor
Evangelical Christian Credit Union

UNITED STATES BANKRUPTCY COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| In re<br><br>ST. STEPHEN'S CHURCH IN GOD IN CHRIST OF SAN DIEGO, CALIFORNIA<br><br>Debtor. | Case No. 10-17785-LT11<br><br>Chapter 11<br><br>**OBJECTION OF EVANGELICAL CHRISTIAN CREDIT UNION TO APPROVAL OF DEBTOR'S DISCLOSURE STATEMENT**<br><br>Date: May 4, 2012<br>Time: 11:00 a.m.<br>Dept: 3<br>Judge: Hon. Laura S. Taylor |

Secured Creditor Evangelical Christian Credit Union ("ECCU") files this Objection to Approval of the Debtor's Disclosure Statement dated March 22, 2012 ("Disclosure Statement").

### I. INTRODUCTION

ECCU is concerned with the viability and feasibility of the Debtor's reorganization. The Debtor filed its voluntary Chapter 11 petition more than 18 months ago, on October 4, 2010. When the case was commenced, the Debtor was delinquent in its payments to its largest, and sole, secured creditor, ECCU, for more than a year. During that period, ECCU attempted to negotiate a restructured loan that the Debtor could service within its then-current budget, to no avail.

After the case was filed, ECCU continued to explore the possibility of a restructured loan,

but has been disappointed with the lack of progress in the Debtor's bankruptcy case, including, among other things, the Debtor's failure to file timely and accurate monthly operating reports, and, until recently, propose a plan of reorganization. Since Spring 2011, the Debtor has indicated to ECCU that a plan would be filed imminently. ECCU has requested that the Debtor provide specific information necessary to support the payment structure and financial projections proposed by the Debtor. The Debtor has struggled to respond to ECCU's requests. ECCU's mounting frustration over the Debtor's delay culminated in the Debtor's stipulation to the Scheduling Order (docket entry 60). Now, more than a year and a half after filing its case, the Debtor has finally filed a Disclosure Statement and proposed Plan of Reorganization dated March 22, 2012 ("Plan"). Unfortunately, the Disclosure Statement neglects to rectify the deficiencies previously identified by ECCU, lacks the information necessary to enable creditors to make an informed decision in voting on the Plan, and fails to provide the adequate information required under the Bankruptcy Code. Therefore, ECCU objects to the Disclosure Statement as follows.

## II. ARGUMENT

The purpose of the Debtor's Disclosure Statement is to provide creditors with accurate and adequate information necessary to enable them to make an informed decision in voting on the Plan of Reorganization. The Bankruptcy Code provides that acceptance or rejection of a proposed reorganization plan may not be solicited unless the creditor or interest holder is provided with the proposed plan "and a written Disclosure Statement approved, after notice and hearing, by the court as containing adequate information." 11 U.S.C. § 1125(b). In order to approve a disclosure statement, the court must first determine that it contains "adequate information." *In re Unichem Corp.*, 72 B.R. 95, 96 (Bankr. N.D. Ill. 1987). "Adequate information" is information of a kind, and in sufficient detail, to enable a "hypothetical investor" typical of the holders of claims and interests in the case to make an informed judgment about the plan. 11 U.S.C. § 1125(a)(1); *In re Metrocraft Publishing Services, Inc.,* 39 B.R. 567, 568 (Bankr. N.D. Ga. 1984) (listing eighteen factors in evaluating adequacy of disclosure statement); *accord, In re United States Brass Corporation*, 194 B.R. 420, 424-425 (Bankr. E.D. Tex. 1996). A common feature in determining the adequacy of

Law Office of
Christine E. Baur
4653 Carmel Mountain Road
Suite 308 #332
San Diego, CA 92130
(858) 350-3757

2

CASE NO. 10-17785
OBJECTION TO APPROVAL OF DEBTOR'S DISCLOSURE STATEMENT

information is whether the disclosure statement includes "financial information, data, valuations and/or projections relevant to the creditors' decision to accept or reject the Plan and to demonstrate the Plan's feasibility." *In re Metrocraft Publishing Services*, 39 B.R. at 568.

Courts may refuse to permit solicitation of a plan if, based on the proposed disclosure statement, it determines that the proposed plan violates applicable provisions of the Bankruptcy Code. *In re Beyond.com Corporation*, 289 B.R. 138, 140 (Bankr. N.D. Cal. 2003); *In re Main Street AC, Inc.*, 234 B.R. 771, 775 (Bankr. N.D. Cal. 1999); *In re Felicity Associates, Inc.*, 197 B.R. 12, 14 (Bankr. D. R.I. 1996). "If on the face of the plan, the plan could not be confirmed, then the court will not subject the estate to the expense of soliciting votes and seeking confirmation." *In re Pecht*, 57 B.R. 137, 139 (Bankr. E.D. Va. 1985); *accord, In re Cardinal Congregate I*, 121 B.R. 760, 764 (Bankr. S.D. Ohio 1990). In order for a plan to be confirmed, the plan proponent bears the burden of proof with respect to every element of 11 U.S.C. § 1129(a).

Bankruptcy Code section 1129(a)(11) requires that confirmation of a plan is not likely to be followed by liquidation or the need for further financial reorganization. 11 U.S.C. § 1129(a)(11). This is commonly referred to as the "feasibility test." The purpose of the feasibility requirement is to prevent confirmation of a visionary scheme that promises more than the debtor can achieve. *In re Gulph Woods Corp.*, 84 B.R. 961, 973 (Bankr. E.D. Pa. 1988). Feasibility has been expressed in a variety of ways. *See, e.g., Matter of T-H New Orleans Limited Partnership*, 116 F.3d 790, 801 (5th Cir. 1997) (feasibility requires "a reasonable assurance of commercial viability"); *In re Jartran, Inc.*, 44 B.R. 331, 393 (Bankr. N.D. Ill. 1984) ("The touchstone of feasibility is whether or not the Debtor emerges with reasonable prospects of financial stability and success...."). A reorganization plan under Chapter 11 "must be more than a nebulous speculative venture..." *In re Great American Pyramid Joint Venture*, 144 B.R. 780, 791 (Bankr. W.D. Tenn. 1992). Thus, while feasibility is assessed at the plan confirmation stage, a showing of feasibility is also required when seeking approval of a disclosure statement, in order to show that the reorganization is more than mere speculation.

Here, a strong feasibility showing in the Debtor's Disclosure Statement is particularly crucial

Law Office of
Christine E. Baur
4653 Carmel Mountain Road
Suite 308 #332
San Diego, CA 92130
(858) 350-3757

3

CASE NO. 10-17785
OBJECTION TO APPROVAL OF DEBTOR'S DISCLOSURE STATEMENT

due to the history and nature of the Debtor's proposed reorganization. The Debtor's Plan provides for no cash infusion or sale of assets, its projected income requires an assumption that revenue from congregation contributions will not decline, its proposed Plan payments hinge on a critical new tenant that is a related entity, and the treatment of its largest and single secured creditor calls for payments over time that have not been shown to be supported by long term financial projections. For the Debtor's Plan to be feasible, the Debtor cannot continue to operate in the same fashion that it has historically, with "fingers crossed" for a financial turnaround. The Debtor must show creditors that it has established a clear path to emerge from its financial troubles. It must explain how it has reliable income, has curtailed its expenses, and has accounted for its foreseeable liabilities. The adequacy of the financial information contained in the Debtor's Disclosure Statement is a critical step in that process.

**A.   The Debtor's Financial Projections are Inadequate**

The Debtor's entire financial projections, cash flow analysis, expense reconciliation and operational disclosures are contained in a single page spreadsheet attached as Exhibit D to the Disclosure Statement ("Budget"). The Debtor's Budget must provide information that is clear, precise, and accurate. ECCU is concerned that the Budget is too thin, lacks support, and assumes too much to be reasonably relied upon by creditors in assessing the feasibility of the Plan.

1.   <u>Financial Projections Do Not Extend Far Enough Into Future</u>. The financial projections in the Budget only extend through 2012, barely eight months after the hearing for approval of the Disclosure Statement. The Plan, however, consists of payment on ECCU's secured claim for 36 months (3 years), loan maturity at 36 months, and payments on the remaining allowed claims over 60 months (5 years). The Debtor previously retained Considine & Considine as its accounting consultants. The Debtor, with the assistance of its accountants, should prepare financial projections through ECCU's Plan treatment, if not for the life of the Plan.

2.   <u>The Budget Does Not Contain Up-To-Date Information.</u> The Budget, filed in March 2012, only includes actual income and expenses for January through September 2011. Financial data for October through December 2011 and all of 2012 are projections. The Budget should

Law Office of
Christine E. Baur
4653 Carmel Mountain Road
Suite 308 #332
San Diego, CA 92130
(858) 350-3757

4

CASE NO. 10-17785
OBJECTION TO APPROVAL OF DEBTOR'S DISCLOSURE STATEMENT

include actual income and expenses for all of 2011 and first quarter 2012.

3. <u>The Budget Needs Clarity and Correction.</u>

- <u>Inconsistent Treatment of Chapter 11 Payments:</u> The Budget "Other Expenses" category only includes the Chapter 11 payment to ECCU. It does not include Chapter 11 payments on Allowed Unsecured Claims, Administrative Non-Professional Claims, or Allowed Administrative Professional Claims (which is misplaced under Monthly Expenses). It does not include payment of the potential Class 2 Tax Claim, or state in its assumptions whether the Debtor would be exempt from this pre-petition tax liability.
- <u>Salary Information is Deficient:</u> The Debtor's personnel consist largely of family and friends of the Debtor's principal. With Salary & Wages at $10,000/month and Personnel Costs at $25,619/month, this is the single largest item in the Budget. The Budget assumptions state that the Debtor reduced its Salary & Wages expense in 2012, but provides no other detail. The Budget should include a schedule listing employees, salaries and personnel costs so that creditors can have clear information about these substantial expenses.
- <u>Property-Tax Information Is Incomplete:</u> The Budget does not include any post-petition monthly expense for property taxes. Until the Debtor has obtained tax-exempt status, it should either budget for the expense or clearly state its basis for an assumption that such an expense will not be incurred.
- <u>Monthly Expenses Are Unexplained:</u> The Debtor's reorganization requires it to curtail and control its expenses, yet the current Budget contains large monthly expenses that are not explained, and which appear excessive given the Debtor's financial situation.
    - o $4,130.29 for "Equip. Rental and Maintenance" (line 8160). The Debtor should provide details of this historical expense and an explanation of its efforts to reduce it.
    - o $4,077.74 for "Insurance" (line 8265). The Debtor should explain this

Law Office of
Christine E. Baur
4653 Carmel Mountain Road
Suite 308 #332
San Diego, CA 92130
(858) 350-3757

CASE NO. 10-17785
OBJECTION TO APPROVAL OF DEBTOR'S DISCLOSURE STATEMENT

expense and describe the coverage. The amount appears to be excessive for an operation of the Debtor's size.

- $3,700.00 for "Professional Fees" (line 7600). This expense appears to be different from the Debtor's Administrative Professionals Claims. The Debtor should disclose what professionals are included in this category and what benefit they provide to the Debtor.

- <u>Maintenance Budget Is Deficient:</u> The Debtor allocates $3,935.44/month to Repair and Maintenance (line 8217), without any explanation. The assumptions state that the Debtor will reduce the Repairs and Maintenance expense starting in January 2012, without indicating whether such a reduction is supportable, or what impact the reduction will have on the Debtor's real property. The Budget needs more detail on whether maintenance expenses are commensurate with operation of the property.

- <u>No Capital Expenditure Provisions</u>. The Disclosure Statement has no description of the state of the Debtor's real property, which is its largest asset. The Budget has no line items for estimated capital expenditures, or reserves for replacement at the property. Projections for commercial properties customarily acknowledge that outlays for aging roofs, failed water heaters, burned out air conditioners, windows, paint, parking lot resurfacing and the like must be made for the property to maintain its value. There should be appropriate line items or reserves for capital expenditures to ensure that the Debtor's main asset does not deteriorate during the life of the Plan.

- <u>Unexplained Assumption:</u> The assumptions state that the Debtor will reduce its expenses for utilities in January 2012 without any support.

In sum, the Budget does not hold up upon closer scrutiny. The format and lack of detail may cause creditors to incorrectly assume that the Budget discloses the post-confirmation liabilities of the Debtor discussed in the body of the Disclosure Statement. The Budget also gives an unsupported impression that the Debtor has reduced its spending. The lack of proper and adequate financial projections leaves creditors unable to accurately assess the Plan, and the Disclosure Statement

6

CASE NO. 10-17785
OBJECTION TO APPROVAL OF DEBTOR'S DISCLOSURE STATEMENT

should not be approved until these deficiencies are rectified.

B.     **Disclosure About the Debtor's Tenant Transaction Is Inadequate**

The Disclosure Statement contains inadequate information regarding the non-ordinary course transaction of the proposed commercial lease with St. Stephen's Retirement Center (the "Retirement Center"). The Retirement Center is an entity affiliated or otherwise related to the Debtor. Under the Bankruptcy Code, the use, sale or lease of estate property outside the ordinary course of a debtor's business is only permitted after Court approval obtained on notice and a hearing. 11 U.S.C. § 363(b), Fed. R. Bankr. Proc. 6004. Heightened scrutiny of a transaction and more fulsome disclosure is required when the proposed transaction involves related parties, in order to demonstrate that the transaction is supported by sound business reasons, based on a sound exercise of good judgment, and is proposed in good faith. *In re Abbotts Dairies*, 788 F.2d 143, 148-150 (3d Cir. Pa. 1986).

In particular, the Debtor's recent unsuccessful attempt to lease space to a tenant further emphasizes the need for additional disclosure regarding the Retirement Center lease. In mid-2011, the Debtor represented to ECCU that it had the financial wherewithal to reorganize because it anticipated $4,700/month rental income from a new tenant, the Magnolia Medical Center. ECCU requested a copy of the Magnolia lease, a subordination, non-disturbance and attornment agreement, and the commercially reasonable financial information normally provided to a lender with a security interest in rents. Eventually, in early January 2012, the Debtor revealed that Magnolia would not or could not cooperate. Thus, from the recent failure of the Magnolia lease to materialize, the Debtor is well aware of the need to undertake a careful and thorough vetting and disclosure regarding any new tenant.

Here, the Budget reveals that the Debtor's historical income generates insufficient cash flow to service the proposed Chapter 11 Plan payments. Thus, the success of the Debtor's Plan hinges on the additional income from the Retirement Center lease. The Debtor should provide comprehensive information about this transaction, including a copy of the lease, disclosure of the tenant's financial condition and the tenant's relationship to the Debtor. The Retirement Center lease has an effective

Law Office of
Christine E. Baur
4653 Carmel Mountain Road
Suite 308 #332
San Diego, CA 92130
(858) 350-3757

7

CASE NO. 10-17785
OBJECTION TO APPROVAL OF DEBTOR'S DISCLOSURE STATEMENT

date of April 1, 2012 (before a hearing or Court approval) and rent of $4,500/month. A copy of the proposed lease should be attached, with a discussion of its key terms. The Disclosure Statement should discuss whether the lease is at market rate, and the Debtor's efforts to obtain a market-rate lease. The Disclosure Statement should discuss whether the lease imposes additional financial liabilities or risks to the Debtor, such as maintenance, repairs, or insurance expenses. The Disclosure Statement should discuss whether the Retirement Center lease will affect the Budget assumptions such as utilities. Given the crucial nature of the income, the Disclosure Statement should provide the Retirement Center's 2010, 2011 and interim 2012 financial statements and other relevant financial information. The Disclosure Statement should provide additional disclosure regarding the Debtor's relationship with this insider entity. No such information is currently provided, making disclosure inadequate. The Disclosure Statement should not be approved until the Debtor supplies this important information.

**C.     Disclosure Regarding the Proposed Treatment of ECCU Claim Should be Enhanced**

The Debtor's Plan proposes to bifurcate its debt to ECCU into two portions, "Note A" which accrues interest at a reduced rate from the current loan, and "Note B" which accrues no interest. Both notes mature 36 months after confirmation, at which time the outstanding balance on both notes will become fully due and payable. ECCU has, and continues to, reserve all rights regarding its claim treatment under the proposed Plan. Regardless, ECCU's claim must be accurately described and the Notes properly quantified. The specific loan requirements should be addressed in the Disclosure Statement. Additionally, in exchange for its concessions and cooperation with the Debtor throughout this case, ECCU has requested certain enhanced rights and protections.

First, ECCU's secured claim includes post-petition interest and attorneys' fees to the date of Plan confirmation pursuant to the terms of its loan and 11 U.S.C. § 506(b). The current wording in the Disclosure Statement omits ECCU's entitlement to post-petition interest and attorney's fees. The principal amount of Note B should therefore be the total amount of ECCU's secured claim, less the principal amount of Note A. Also, the proposed bifurcation of ECCU's loan into two tranches requires new loan documentation. The loan documentation must be in form and substance (i) similar

Law Office of
Christine E. Baur
4653 Carmel Mountain Road
Suite 308 #332
San Diego, CA 92130
(858) 350-3757

8

CASE NO. 10-17785
OBJECTION TO APPROVAL OF DEBTOR'S DISCLOSURE STATEMENT

to that currently governing the indebtedness of the Original Note, and (ii) agreeable to ECCU. Further, ECCU's liens over the collateral of the Reorganized Debtor must maintain the priority, perfection and seniority of the liens ECCU currently has over the Debtor's collateral. These matters can be addressed through drafting changes, and ECCU is willing to work with the Debtor to revise the language to accurately describe and quantify ECCU's claim. .

Second, in light of ECCU's extraordinary cooperation with the Debtor's reorganization efforts and the significant risk posed to ECCU under the Plan, ECCU has advised the Debtor that it seeks certain protections and supportive findings in the Plan. Specifically, the Plan should acknowledge that ECCU's Secured Claim is an Allowed Claim. ECCU also seeks the Debtor's agreement that the Reorganized Debtor will not file a new bankruptcy petition within 180 days of Plan confirmation. In the event of a default after Plan confirmation, the Plan should state that the Reorganized Debtor will not object to any motion for Relief from Stay filed by ECCU in a subsequent bankruptcy that is filed more than 180 days later.

Finally, the current proposed treatment of ECCU's claim reveals a perhaps unintended budget loophole. Under the proposed Plan, ECCU receives principal and interest payments on Note A of $9,814/month, no interest on Note B, and only a potential recovery of Note B principal before maturity only if the Debtor receives the Dudley Ventures reimbursement funds <u>and</u> the amount received exceeds the then-outstanding balance on the Allowed Administrative Claims. The Allowed Administrative Claims total approximately $83,000, and the Debtor proposes to pay $2,850/month until the claims are paid in full. If and when the Dudley Ventures funds are received, however, the Debtor will immediately pay the outstanding balance of Allowed Administrative Claims, net of the $2,850/month paid to date. The balance of the Dudley Ventures funds is then applied to Note B. If the Debtor receives the Dudley Ventures funds close to the Note B maturity date, the Allowed Administrative Claims will have been reduced through the monthly payments, and ECCU will receive a higher percentage of the funds. If the Debtor receives the Dudley Ventures funds shortly after Plan confirmation, a higher percentage of the funds will be needed to fully repay Allowed Administrative Claims, and less will be available to pay down Note B. To balance the outcome

Law Office of
Christine E. Baur
4653 Carmel Mountain Road
Suite 308 #332
San Diego, CA 92130
(858) 350-3757

9

CASE NO. 10-17785
OBJECTION TO APPROVAL OF DEBTOR'S DISCLOSURE STATEMENT

regardless of when the Dudley Ventures funds are received, the $2,850/month allocated for payment of the Allowed Administrative Claims should be added to the $9,814/month payment to ECCU if the Debtor receives the funds prior to maturity of Note B. This issue can also be addressed through revisions to the language in the Disclosure Statement and proposed Plan.

**D.    Information on Other Assets and Liabilities is Insufficient**

At least two other matters of potential significance receive inadequate discussion in the Disclosure Statement: (i) the potential reimbursement of funds from Dudley Ventures for the Valencia Park project, and (ii) the Debtor's potential liability for pre- and post-petition property taxes. ECCU has repeatedly requested that the Debtor provide further detail on both matters. On the Dudley Ventures matter, the Debtor describes this potential estate asset as "significant," but does not indicate the amount of funds it is owed, the steps taken and to be taken to obtain the monies, the likelihood of recovery, and the potential timing for receipt. This information should be provided.

Similarly, the Debtor fails to disclose what steps it has taken over the year and a half since it filed its case to reduce or eliminate its tax liabilities through obtaining tax-exempt status from property taxes. Tax-exempt status is an asset of the estate. If, as the Disclosure Statement suggests, the only impediment to obtaining tax-exempt status is submission of certain paperwork, then the Debtor should better explain the state of that process. Until the Debtor fully and adequately addresses these potential estate assets and liabilities, the Court should not approve the Disclosure Statement.

### III. CONCLUSION

The Debtor is required to provide adequate and accurate information in its Disclosure Statement. ECCU's Objection concerns all creditors because it goes to the heart of whether this Debtor can propose a viable and feasible Plan. In order for creditors and the Court to make that determination, the Debtor must supplement and amend the Disclosure Statement as set forth in the Objection. ECCU has been seeking the information identified in its Objection for months. The Debtor has stipulated that it would make amendments to its Disclosure Statement within one week of the Disclosure Statement hearing. ECCU requests that the Court deny approval of the Disclosure

Law Office of
Christine E. Baur
4653 Carmel Mountain Road
Suite 308 #332
San Diego, CA 92130
(858) 350-3757

10

CASE NO. 10-17785
OBJECTION TO APPROVAL OF DEBTOR'S DISCLOSURE STATEMENT

Statement until these inadequacies are corrected and appropriate amendments to the Disclosure Statement and Plan are made.

Dated: April 23, 2012                           LAW OFFICE OF CHRISTINE E. BAUR


By: /s/ Christine E. Baur
    Christine E. Baur

    Attorneys for Secured Creditor
    Evangelical Christian Credit Union

Law Office of
Christine E. Baur
4653 Carmel Mountain Road
Suite 308 #332
San Diego, CA 92130
(858) 350-3757

11

CASE NO. 10-17785
OBJECTION TO APPROVAL OF DEBTOR'S DISCLOSURE STATEMENT

## **PROOF OF SERVICE**

I, the undersigned, certify and declare that I am a citizen of the United States, over the age of 18 years and not a party to this action. My business address is 4653 Carmel Mountain Road, Suite 308 #332, San Diego, California 92130. On the date of execution below, I served the following document in the manner specified below:

**OBJECTION OF EVANGELICAL CHRISTIAN CREDIT UNION TO APPROVAL OF DEBTOR'S DISCLOSURE STATEMENT**

X    by NOTICE OF ELECTRONIC FILING I delivered a true copy of the above referenced document(s) by Notice of Electronic Filing generated by the Court's CM/ECF system, to all parties identified for Notice of Electronic Filing generated by the Court's CM/ECF system under the above-referenced case caption and number to:

Paul J Leeds on behalf of Debtor St. Stephen's Church in God in Christ of San Diego, California
leedsp@higgslaw.com, reisingc@higgslaw.com

Rahil K. Swigart on behalf of Debtor St. Stephen's Church in God in Christ of San Diego, California
swigart@higgslaw.com, millerl@higgslaw.com

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on April 24, 2012 at San Diego, California.

By:   /s/ Christine E. Baur

Christine E. Baur
Attorneys for Secured Creditor
Evangelical Christian Credit Union

Law Office of
Christine E. Baur
4653 Carmel Mountain Road
Suite 308 #332
San Diego, CA 92130
(858) 350-3757

CASE NO. 10-17785
OBJECTION TO APPROVAL OF DEBTOR'S DISCLOSURE STATEMENT